CHARLES H. SIMPSON et al. v. T. H. PEGRAM et al.

*Contract—Evidence—" Letter-heads" and Advertisements.*

Upon an issue whether goods had been delivered to defendant as upon consignment, or upon an absolute sale—the letter containing the order being indefinite on this point—the "letter-head" of the defendant, printe l upon the paper upon which the order was written, in which he described his business as " General Merchandise Broker " and solicited consignments, was some evidence to be submitted to and considered by the jury in determining the nature of the transaction.

CIVIL ACTION, tried at February Term, 1891, of FORSYTH Superior Court, *Bynum, J.,* presiding.

' The plaintiffs brought this action to recover the value of a considerable quantity of flour from the defendant Pegram .and his co-defendants, who are his assignees. Pegram ordered from the plaintiffs the flour in question by letter, of which the following is a copy:

OFFICE OF

. T. H. PEGRAM, JR..

*Gsneral Merchandise Broker.*

CONSIGNMENTS SOLICITED.

And dealer in Wagons, Grain, Hay, Mill Feed. etc.

· WINSTON, N. C., Nov. 14; 1887.

*Messrs. Simpson, Bass & Co., Richmond, Va.*

GENTS :—Please send me the following :

| 100 bags | 98lb | Bob White | 50 Bbls. |
| 100 " | 49 | " . " | 25 " |
| 200 " | 24 | " " | 25 " |
| 400 " | 12 | " " | 25 " |

Ship as soon as possible, as I need the goods right now. Want fresh goods.                    Yours truly,

T. H. PEGRAM, JR.

The plaintiffs contend the flour was consigned to defendant Pegram and not sold to him.

The defendants admit the flour in controversy was received by the defendant Pegram, and the most of it was in his possession at the time of his assignment to Buxton and Grogan; passed into the hands of the assignees, and the proceeds of said flour is now in their hands, but the defendants contend the flour was bought by the defendant Pegram and not consigned.

The following issue was submitted to the jury: "Was the flour in controversy in this action consigned to the defendant Pegram by plaintiffs?"

The plaintiffs offered in evidence and read to the jury the letter above set forth, and rested their case.

. His Honor instructed the jury that, upon the evidence offered by the plaintiffs they should render a verdict for the defendants and answer the issue No.    Plaintiffs excepted.

There was a verdict for the defendants, and thereupon the Court gave judgment in favor of the plaintiffs against the defendant Pegram for the value of the flour, and that defendants' assignees go without day.    The plaintiffs having excepted, appealed.

*Mr. R. B. Glenn*, for plaintiffs.
*Mr. J. S. Grogan*, for defendants.

MERRIMON, C. J.—after stating the case: In the course of the business of trade, "letter-heads," "bill-heads," and like advertising mediums, when identified and connected with the party using and giving them out for his own purpose and advantage, have point and significance, and the more when they appear directly in connection with and give or reasonably may give cast and meaning to business correspondence and transactions in their nature uncertain and indeterminate and requiring explanation as to their meaning and purpose    They may and oftentimes ought to be taken as indicative and explanatory of the correspondence or transactions left uncertain and imperfect without them, and have more or less weight according to their nature, connections, application, bearing and the circumstances. Oftentimes, the very purpose of the use of them is to give the public, as well individuals, notice of the advertiser's business, its nature, where it is carried on, and to invite correspondence, business and trade transactions.

When a person thus holds himself out—declares the nature of his business and purpose to another person with whom he deals, in the absence of explanation in some way

appearing to the contrary—the reasonable inference is that his contract, the transaction pertinent to his business, was of the nature contemplated by that business thus made known. And that he thus made known his business, may in a proper case be shown by any competent evidence. Thus, if such person should, under a " letter-head " declaring the nature and place of his business, write and send a letter to a person engaged in a business at a distance from him, with whom he wished and proposed to have a business transaction pertinent to his business, without particularly specifying its nature and terms, and a transaction accordingly took place, the inference would be that it was such as his business contemplated, and the letter, including the " letter-head," would be competent evidence of the fact in a proper case. The true office of such evidence would be " to interpret the otherwise indeterminate intention of the parties, and to ascertain the nature and extent of their contracts, arising not from express stipulation but from mere implication and presumptions and acts of a doubtful and equivocal character; and to fix and explain the meaning of words and expressions of doubtful or various senses. On this principle the usage or habit of trade or conduct of an individual, which is known to the person who deals with him, may be given in evidence to prove what was the contract between them." 2 Gf. Ev., § 251. In the notes to *Wigglesworth* v. *Dollison*, 1 Smith's Leading Cases, 300, it is said, " The usage of an individual in his own business as to the manner of performing it, and the like, if known to the party dealing with him, is competent to show that the contract was on those terms." *Norris* v. *Fowler*, 87 N. C., 9.

In the case before us, the defendant Pegram wrote to the plaintiffs immediately, under a printed " letter-head," stating the character of his business—that of a " General Merchandise Broker"—and soliciting " consignments" for the purpose of his business. The letter was in nowise inconsistent with

such business purpose. It was in material respects indefinite in its terms. It did not contain a proposition to purchase goods or to pay for the same presently or in the future—it simply asked that the goods specified be sent to him promptly. By his letter, he represented to the plaintiffs that he was such broker—that he desired consignments of goods for the purpose of his business—he asked that certain goods pertinent for his business be sent to him at once. Taking his representations as to his business—his requests—the whole together constituted evidence to go to the jury tending to prove that he wished and intended that the goods be consigned to him to be sold, not as his own, but as the plaintiffs', in the course of his business, and that the plaintiffs so understood, intended and agreed; and sent him the goods accordingly. Pegram's business as "General Merchandise Broker" did not by its nature imply that he purchased or took title to the goods he sold—on the contrary, it might be that he sold such merchandise for one person to another for compensation, and to that end, and to facilitate his business, he "solicited" consignments of goods. He sent his letter-head in connection with and as part of his letter to the plaintiffs, and the whole constituted evidence of his contract with them and tended to prove that the flour in controversy belonged to them. The Court should have so instructed the jury, leaving them to determine its weight.

There is error. The plaintiffs are entitled to a new trial.

Error.